# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2984

_____

Lois Cunningham,               *
                                      *
         Appellant,            *
                                      *
        v.                    *    Appeal from the United States
                                      *    District Court for the District
Kenneth S. Apfel, Commissioner of    *    of Minnesota.
Social Security Administration,       *
                                      *
         Appellee.             *

_____

Submitted: May 8, 2000

Filed: August 4, 2000

_____

Before McMILLIAN, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Lois Cunningham appeals the district court's judgment affirming the denial of her application for Social Security disability benefits. We reverse and remand.

## I. BACKGROUND

Cunningham is a sixty-year-old woman with a ninth-grade education. She has been employed as an electronics assembler, solderer, and fishing tackle assembler. Cunningham asserts that she has been unable to engage in substantial gainful activity since June 1, 1993, because of hypertension, diabetes, back and leg pain, heart problems, carpal tunnel syndrome, chronic obstructive pulmonary disease, a thyroid condition, hearing loss, and incontinence.

Cunningham applied for disability benefits on April 15, 1994. In addition to the above-listed ailments, records of her application for benefits contain notations that "she forgets a lot" and her "fingers go numb." Her application was denied initially and on reconsideration. She then requested, and was granted, a hearing before an administrative law judge (ALJ). She was not represented by an attorney at the hearing.

At the hearing, Cunningham testified that she had "a lot of back pain" and trouble with her right hand "going to sleep and going numb." She also testified that she was a diabetic and took insulin every day. She stated that she took medication when she "was having chest pain." She further testified that her back pain was getting "worse and worse," and that just prior to the time she stopped working she was having pain in her back and numbness in her leg. Her daily activities included walking over a mile each day, and cooking and cleaning. She testified that she could generally care for her personal needs and could drive, but was unable to travel long distances without stretching. She also stated that she was no longer able to knit, crochet or assist in canning fruit or vegetables because of numbness in her hands.

The medical records submitted to the ALJ showed that Cunningham sought medical treatment from 1992 through 1995 for complaints of aching and numbness in her hands, feet and toes; back pain; fatigue; high blood pressure; anxiety; edema;

-2-

shortness of breath; hearing loss; diabetes; and rapid heartbeat. A sensory exam in 1994 showed "a stocking/glove[1] distribution sensory loss to pin-prick in the upper and lower extremities." She was diagnosed with "lower extremity paresthesias[2] secondary to diabetes." Her treating physician stated in a letter that she had complications of diabetes including peripheral neuropathy. She was also diagnosed as suffering from angina, sciatica, a bulging disc, hypothyroidism, hypertension, mild pulmonary hypertension, and early chronic obstructive pulmonary disease.

An impartial medical expert testified that he had reviewed Cunningham's medical records. He stated that none of Cunningham's numerous impairments were of a level of severity to be presumptively disabling. With respect to the diabetes, he stated "[t]here are notes that she has neuropathy from this, but I couldn't find any documentation of abnormalities in the neurological findings." He testified that she should be restricted to light work, should not work at heights, should not drive at work and should not "do work where there would be repetitive flexion of the wrist . . . such as a meat cutter" or do work "that would require repetitive use of the fingers such as a keyboard, a computer, [or] typewriter." He also stated that she should not do work requiring repetitive bending or twisting of the trunk and should be limited to only occasional squatting, stooping, and kneeling.

A vocational expert also testified. He was asked whether there were jobs in the economy for a hypothetical worker with Cunningham's work experience, with the limitations set forth in the medical expert's testimony, and for whom "ordinary use of fingers and wrists would be okay." He responded that such jobs did exist and that such

---

[1]This refers to glove anesthesia which is a "loss of sensation in the hand and wrist." Dorland's Illustrated Medical Dictionary at 74 (28th ed. 1994).

[2]Paresthesia is "an abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus." Dorland's at 1234.

a hypothetical worker could perform Cunningham's former job as an electronics assembler or forty or fifty other assembler-type jobs.

The ALJ issued her decision on February 2, 1996. She stated "there is no documentation in the medical record of end organ damage or peripheral neuropathy related to diabetes." She found no evidence of neurological changes as documented by an EMG or a neurological exam by a specialist. She also noted "there is very little documentation in the record with regard to a back impairment" and that "carpal tunnel symptoms are not a significant problem." Accordingly, she found Cunningham was not precluded by her impairments from performing her past work as an electronics assembler, circuit board solderer, or fishing tackle assembler.

Cunningham appealed the decision to the Appeals Council and submitted additional medical evidence. The additional evidence included records of two back surgeries in 1974, treatment at a pain clinic in 1976, carpal tunnel surgery in 1984, a hysterectomy in 1993, treatment for depression in 1995, as well as records of numerous visits to physicians.[3]

---

[3]The records contain extensive documentation of numerous serious illnesses suffered by Cunningham before, during, and after the relevant time period. Significantly, the medical records support diagnoses of depression and diabetic neuropathy during the relevant period.

Specifically, Cunningham was treated in July 1995 for acute onset of anxiety with depression. This was before the ALJ issued her decision. The psychologist further noted that Cunningham's symptoms had been present since 1992. In September 1996, Cunningham underwent an extensive psychiatric evaluation. The evaluation noted a suicide attempt at age 17. Psychological testing revealed borderline to low-average intellectual functioning, evidence of mental deterioration, and impaired problem-solving abilities. The psychologist noted an increase in Cunningham's forgetfulness and also noted suicidal ideation and panic attacks. Cunningham's treating psychologist also completed a Psychological Review Technique Form (PRTF) outlining

The Appeals Council denied Cunningham's request for review and affirmed the ALJ, finding that the additional evidence did not provide a basis for changing the ALJ's decision. It found that the evidence either predated the alleged onset date, or was subsequent to the February 1996 ALJ decision and thus was not material. With respect to the evidence that related to the period between the alleged onset date and the ALJ's decision, the Appeals Council found no evidence that showed that Cunningham's condition was more severe than had been determined by the ALJ.

Cunningham then appealed to the district court. The matter was referred to a magistrate judge, who recommended a remand. The magistrate judge found that the ALJ's findings were not supported by substantial evidence. He recommended a remand for findings on Cunningham's residual functional capacity. The district court, however,

_____

Cunningham's work-related functional limitations. It was determined that Cunningham experienced frequent deficiencies of concentration, persistence or pace; was markedly limited in her ability to maintain attention for extended periods; and was extremely limited in ability to complete a normal workday or workweek without interruptions from psychologically-based symptoms. The psychologist stated that the described limitations had worsened in 1992. She diagnosed major depressive disorder and noted that Cunningham "has had a depressive disorder for quite some time." She further noted a decline in cognitive functioning and significant memory problems and stated that Cunningham was unable to function in a work setting.

Also, Cunningham was treated in June 1996 for a "pins and needles" sensation in her feet. She was diagnosed as having peripheral neuropathy. Although this examination occurred after the date of the ALJ's decision, doctor's notes indicate that the condition had been ongoing for several years. Earlier records support the conclusion. In addition, records show that she had toenails removed in June 1996, but suffered little pain with the procedure due to neuropathy. She later complained that she was falling every few weeks because of loss of sensation in her legs. In January 1997, a neurologist noted neuropathy and an EMG was consistent with that diagnosis.

-5-

declined to adopt the recommendation of the magistrate judge and instead affirmed the ALJ.

Cunningham appeals. She contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider Cunningham's mental limitations; failed to adequately develop the record; and posed an inadequate hypothetical to the vocational expert.[4]

## II.    DISCUSSION

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998). Substantial evidence is less than a preponderance, but is enough that a reasonable mind might find it adequate to support the ALJ's conclusion. See Cox v. Apfel, 160 F.3d 1203, 1206-07 (8th Cir. 1998). In determining whether existing evidence is substantial, we consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999).

We first determine the effect of the evidence submitted to the Appeals Council. The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. See 20 C.F.R. § 404.970(b). The newly submitted evidence thus becomes part of the "administrative record," even though the evidence was not originally included in the ALJ's record. See Nelson v. Sullivan, 966 F.2d 363, 366 (8th

---

[4]Cunningham has also filed a motion to remand for consideration of the Commissioner's award of benefits to Cunningham under her subsequent application. We deny the motion as moot and take judicial notice of the agency action. See Arkla Exploration Co. v. Texas Oil & Gas Corp., 734 F.2d 347, 361 n.22 (8th Cir. 1984).

Cir. 1992). If the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence, including the new evidence, it will review the case. See 20 C.F.R. § 404.970(b). Here, the Appeals Council denied review, finding that the new evidence was either not material or did not detract from the ALJ's conclusion. In these circumstances, we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination. See Nelson, 966 F.2d at 366.

We review the action under the Commissioner's familiar sequential process. Under the regulations, the disability determination involves a step-by-step analysis of a claimant's current work activity; the severity of his or her impairments; and an assessment of the claimant's residual functional capacity in light of his or her age, education and work experience. See 20 C.F.R. § 404.1520(a); Braswell v. Heckler, 733 F.2d 531, 533 (8th Cir. 1984). If the claimant suffers from an impairment that is either included in, or equal to, an impairment listed in the Commissioner's itemization of presumptively disabling impairments (the Listings), the claimant will be determined disabled without consideration of his or her age, education, or work experience. See Braswell, 733 F.2d at 533. If the Commissioner finds that the claimant does not have an impairment that meets the Listings, the Commissioner next considers the claimant's residual functional capacity and the physical and mental demands of the claimant's past work and determines whether the claimant can still perform that work. See 20 C.F.R. § 416.920(e). If the claimant is unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy. See Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000).

Because Cunningham has since filed a second application and has been awarded benefits beginning on the day after the ALJ's decision was rendered, the issue here is whether Cunningham was disabled and thus entitled to benefits from the date of her

alleged onset of disability–June 1992–until the date of the ALJ's decision– February 2, 1996.[5] We find the record as a whole, including the evidence submitted to the Appeals Council, does not support the ALJ's decision.

Initially, we note that Cunningham has asserted multiple impairments. Under these circumstances, the Social Security Act requires the Commissioner to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling. See 20 C.F.R. § 404.1523; Delrosa v. Sullivan, 922 F.2d 480, 484 (8th Cir. 1991). In the present case, the ALJ was obligated to consider the combined effects of Cunningham's numerous physical impairments as well as her mental impairments. See id.

The record shows that Cunningham has significant mental limitations that were not considered by the ALJ.[6] These include mental illness, borderline intellectual

---

[5]The Appeals Council advised Cunningham to file another application for benefits based on the medical evidence after the date of the hearing. She has since been awarded disability benefits beginning on February 3, 1996, the day after the ALJ decision in this case. The notice of award states "[w]e cannot find that your disability started before February 2, 1996 on this claim because final action is still pending on your earlier claim."

[6]The ALJ's failure to consider Cunningham's mental and other limitations stems in part from her failure to adequately develop the record. An ALJ has this well-established duty to develop a full and fair record because the hearing is non-adversarial—the goals of the Commissioner and the advocates should be the same: that deserving claimants who apply for benefits receive justice. See Wilcutts v. Apfel, 143 F.3d 1134, 1137-38 (8th Cir. 1998). Here, in spite of testimony that should have alerted the ALJ to Cunningham's mental limitations, the ALJ did not pursue any questioning that could have revealed Cunningham's mental disabilities. Such "'[s]uperficial questioning of inarticulate claimants or claimants with limited education is likely to elicit responses which fail to portray accurately the extent of their limitations.'" Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994) (quoting Lashley v.

functioning, memory loss, and loss of cognitive ability. At the hearing, Cunningham testified that she had been in special education classes and had later dropped out of school because of academic difficulties. The record also shows that Cunningham was treated for anxiety and suffered from depression during the relevant time period. The materials submitted to the Appeals Council showed that Cunningham had a history of depression and, indeed, had once attempted suicide. Although some of the medical records submitted to the Appeals Council either pre-dated or post-dated the relevant time period, the evidence related to conditions that existed during that period. The timing of an examination is not dispositive of whether evidence is material; medical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision. See Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990). Cunningham's treating psychologist stated that Cunningham was disabled by depressive disorder and the condition had existed since 1992.[7] Cunningham's history of depression and anxiety before her alleged disability onset date supports that opinion.

The ALJ also failed to credit or to properly consider evidence of peripheral neuropathy that would affect Cunningham's ability to use her hands. A diagnosis of peripheral neuropathy is supported by the record. The "stocking/glove" reference and pin-prick test results in the materials submitted to the ALJ refer to this disorder. The evidence later submitted to the Appeals Council supports the earlier diagnosis. The record further shows that the condition was deteriorating during the time period at issue.

---

Secretary of Health and Human Servs., 708 F.2d 1048, 1052 (6th Cir. 1983)).

[7]In fact, the PRTF completed by Cunningham's treating psychologist showed that Cunningham had a severe impairment with functional limitations that would meet the listing for an affective disorder. See 20 C.F.R. § 404.1520a(b)(3); 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04. See generally Pratt v. Sullivan, 956 F.2d 830, 835-36 (8th Cir. 1992). This evidence was unrefuted.

The ALJ and the Appeals Council both failed to credit Cunningham's treating physicians' opinions that she suffered from diabetic neuropathy and disabling depression during the relevant time period, instead crediting a medical consultant's testimony. A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. See Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991). In fact, it should be granted controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). By contrast, "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." Id.

If the ALJ and the Appeals Council had properly credited the opinions of treating physicians, the evidence could have supported a finding that Cunningham was presumptively disabled (i.e., "met the Listings") by reason of either diabetes, neuropathy, or mental illness.[8] At the least, the evidence of peripheral neuropathy, combined with Cunningham's history of Carpal Tunnel Syndrome (which, contrary to the ALJ's assertion, had intermittently caused Cunningham recurring problems with her

---

[8]The listing for presumptively disabling diabetes requires a showing of a diabetes diagnosis with "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. pt. 404, subpt. P, app. 1 § 9.08(A). Peripheral neuropathy is presumptively disabling as a neurological disorder with a showing of significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. See id. § 11.14. A presumptively disabling affective disorder is shown by a medically documented depressive syndrome accompanied by functional loss severe enough to be incompatible with the ability to perform work-related functions. See id. § 12.04; 20 C.F.R. § 404.1520a.

hands) mandated the finding that Cunningham could not return to her former job as a factory assembler.[9]

Our review of the record shows that Cunningham met her burden of proving she could not return to her former work. Under the familiar sequential analysis, the burden should then have shifted to the Commissioner to prove that there were jobs in the economy that Cunningham could perform. We find that the Commissioner could not have met this burden.

Ordinarily, we would remand to the Commissioner for vocational expert testimony on the issue of Cunningham's residual functional capacity. In this case, however, such a remand is unnecessary. At the time of the ALJ hearing, Cunningham was fifty-five years old. This is considered "advanced age" under the regulations. See 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.00(f). Her previous work as a factory assembler is considered unskilled or semi-skilled and would not involve any transferable skills. See United States Dep't of Labor, Employment and Training Admin., Dictionary of Occupational Titles, Vol. II Appendix C at 1009 (4th ed. 1993) (referring to specific vocational preparation); 695 (production assembler-any industry). See also Fines v. Apfel, 149 F.3d 893, 895 (8th Cir. 1998) (explaining transferable skills). In addition, her educational development is limited.

---

[9]In light of this finding, we note that the question to the vocational expert was flawed. There is no evidence to support an assumption that Cunningham could use her hands in an "ordinary" way. Since the hypothetical question posed to the vocational expert did not adequately reflect Cunningham's impairments, his testimony that assembler-type jobs exist for her in the national economy cannot constitute substantial evidence on the record as a whole. See Pratt, 956 F.2d at 836.

Under the medical-vocational guidelines, even without consideration of Cunningham's numerous subjective complaints,[10] when an individual of advanced age can perform a full range of light or sedentary work, but must perform unskilled or semi-skilled labor and has no transferrable skills from her previous work, as is the case here, she is considered to be disabled. See 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.00 (Table No. 1) (sedentary work); id. § 202.00 (Table No. 2) (light work); see also 20 C.F.R. § 404.1563 (d) (if a claimant is severely impaired and of advanced age and cannot do medium work, she may not be able to work unless she has skills that can be used in less demanding jobs in the national economy),

On the record before us, we have no difficulty concluding that Cunningham was disabled during the relevant time period. The record supports a finding either that: (1) Cunningham meets the Listings and is presumptively disabled without consideration of her age and work history; or (2) her age and work history mandate a finding of disabled under the medical-vocational guidelines even without consideration of her subjective complaints; or (3) proper consideration of her subjective complaints, in combination with her numerous other impairments, including mental illness, show that Cunningham is disabled. If the record contains substantial evidence supporting a finding of disability, we may reverse and remand for an order granting benefits to the claimant.

---

[10]The medical-vocational guidelines (or "grids") are to be consulted when an individual has shown a severe medically determinable physical or mental impairment that prevents the performance of his or her vocationally relevant past work. See 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00. Ordinarily, the grids cannot direct a finding of disabled or not disabled where an individual has asserted solely a nonexertional type of impairment. See id. § 200.00(e)(1). However, where an individual has an impairment resulting in both strength limitations and nonexertional limitations, the grids may be consulted in determining whether a finding of disabled may be possible on strength limitations alone. See id. § 200.00(e)(2). Consideration of Cunningham's nonexertional limitations such as pain would only fortify the conclusion that she is disabled.

See <u>Andler v. Chater</u>, 100 F.3d 1389, 1394 (8th Cir. 1996). Under the circumstances of this case, a remand is unnecessary and would only delay benefits. <u>See</u> <u>id.</u>

## III. CONCLUSION

For the reasons stated above, this action is remanded to the district court for entry of an order directing the Commissioner to award benefits to Cunningham.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.