# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1705

_____

Robert J. Lauer,                             *
                                             *
        Appellant,                           *
                                             *   Appeal from the United States
        v.                                   *   District Court for the District
                                             *   of Minnesota.
Kenneth S. Apfel,                            *
Commissioner of Social Security,             *
                                             *
        Appellee.                            *

_____

Submitted: November 17, 2000

Filed: April 4, 2001

_____

Before LOKEN, LAY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

When Robert Lauer applied for disability insurance benefits the Social Security Administration denied his application initially and on reconsideration. Following a hearing, an administrative law judge (ALJ) also determined that Mr. Lauer was not disabled. The Appeals Council denied Mr. Lauer's request for review.

Mr. Lauer appealed to the district court, which upheld the administrative decision. He then appealed to this court. In this appeal, he contends that the ALJ's

decision was contrary to law and not supported by substantial evidence because the ALJ substituted his own opinion for that of the treating and examining professionals, and failed to include in the hypothetical question posed to the vocational expert all of the limitations caused by Mr. Lauer's mental impairments.

We review *de novo* a district court decision upholding the denial of social security benefits. *See Pettit v. Apfel*, 218 F.3d 901, 902 (8th Cir. 2000). When reviewing an ALJ's decision, we determine whether it is based on legal error and we examine the evidence supporting and detracting from the decision to determine whether the ALJ's factual findings are supported by substantial evidence in the record as a whole. *See id.* In Mr. Lauer's case, we vacate the judgment and order the district court to remand the case to the Social Security Administration for further proceedings.

## I.

An ALJ generally follows a five-step process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

The ALJ in Mr. Lauer's case first concluded that Mr. Lauer had not engaged in substantial gainful activity since his alleged onset date, and next found that the combination of his physical and mental impairments created a "severe impairment," *i.e.*, one that "significantly limit[ed] [his] physical or mental ability to do basic work activities," *see* 20 C.F.R. § 404.1520(c). The ALJ concluded, however, that Mr. Lauer's impairments did not meet the criteria for any of the listed impairments that are acknowledged by the Social Security Administration to be so severe as to result in a conclusive presumption of disability. *See Yuckert*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(d).

The ALJ therefore considered Mr. Lauer's residual functional capacity to determine whether Mr. Lauer could return to his past work. *See* 20 C.F.R.

§ 404.1520(e). "Residual functional capacity" (RFC) is defined as "what [the claimant] can still do" despite his or her "physical or mental limitations," *see* 20 C.F.R. § 404.1545(a). The ALJ determined that Mr. Lauer lacked the RFC to return to his past work of repairing appliances.

After the ALJ determined that Mr. Lauer could not do his past work, the social security commissioner was required to prove that Mr. Lauer had the RFC to perform other kinds of work, and that the jobs that he could perform exist in substantial numbers in the national economy. *See Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). The ALJ, relying on the opinion of a vocational expert, concluded that Mr. Lauer could perform such other jobs as an assembly worker, a parking ramp cashier, or a security guard, and that such work was available in the economy. Mr. Lauer challenges the ALJ's conclusion that he can perform other work, arguing that there was insufficient medical support for the ALJ's determination of his RFC, and that this erroneous RFC determination was the basis for the vocational expert's opinion with respect to what other jobs Mr. Lauer could do.

## II.

When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments. *See Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000). Mr. Lauer does not contest the ALJ's determination of the degree to which his physical impairments affected his RFC. The ALJ also found, however, that Mr. Lauer had two mental impairments, depression, *see* § 12.04A, § 12.04C, and a somatoform disorder (which manifests as "[p]hysical symptoms for which there are no demonstrable organic findings or known psychological mechanisms"), *see* § 12.07 (all three sections from 20 C.F.R. part 404, subpart P, appendix 1), and Mr. Lauer challenges the ALJ's finding that his mental impairments limited his RFC only by restricting him to brief and superficial contact with the public.

Mr. Lauer contends that the ALJ's conclusion that his mental impairments limited only the degree to which he was able to interact with the public was not sufficiently supported by medical evidence, and that the ALJ improperly substituted his own lay opinion for the opinions of treating or examining professionals. *See Pratt v. Sullivan*, 956 F.2d 830, 834 (8th Cir. 1992) (*per curiam*). Although the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000), we have also stated that a "claimant's residual functional capacity is a medical question," *Singh*, 222 F.3d at 451. "[S]ome medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (*per curiam*), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace," *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

Therefore, although in evaluating Mr. Lauer's RFC, *see* 20 C.F.R. § 404.1545(c), the ALJ was not limited to considering medical evidence, we believe that the ALJ was required to consider at least some supporting evidence from a professional. *Cf. Ford v. Secretary of Health and Human Services*, 662 F. Supp. 954 (W.D. Ark. 1987) (RFC was "medical question," *id.* at 955, and medical evidence was required to establish how claimant's heart attacks affected his RFC, *id.* at 956), cited with approval in *Nevland*, 204 F.3d at 858.

III.

Dr. John Bohrod, Mr. Lauer's treating psychiatrist, and Dr. Richard Henze, the licensed psychologist who administered the Minnesota Multiphasic Personality Inventory and the Wechsler memory and intelligence tests to Mr. Lauer at the request of the Social Security Administration, agreed that Mr. Lauer's ability to perform significant work-related functions was limited or nonexistent. For example, on the forms assessing Mr. Lauer's mental RFC, each rated as "poor or none" Mr. Lauer's ability to deal with work stresses and to deal with the public. In addition, Dr. Bohrod stated that "all" of Mr. Lauer's "work activities" were "severely limited," while

-4-

Dr. Henze described Mr. Lauer's condition as "incapacitat[ed]." The ALJ stated that he did not "adopt" the opinions of these professionals, in part because the treating psychiatrist did not rely on testing and in part because the psychologist who later administered tests to Mr. Lauer was not a treating doctor (although he met with Mr. Lauer three times and reviewed his medical records).

Even if the ALJ provided ample reasons for his decision not to adopt the opinions of Dr. Bohrod, *see* 20 C.F.R. § 404.1527(d)(2) (describing when treating doctor's opinions are "controlling") or of Dr. Henze, we have located no medical evidence to support the ALJ's conclusion that Mr. Lauer's mental impairments, the existence of which the ALJ acknowledged, limited only the degree to which he could interact with the public. On appeal, the social security commissioner argues that the ALJ's conclusion is supported by the medical records of an earlier treating psychiatrist, Dr. Scott McNairy, and by the mental RFC assessment of a nonexamining consultant, Dr. Daniel Larson.

Dr. McNairy was Mr. Lauer's first psychiatrist. Mr. Lauer went to see Dr. McNairy after more than two years of treatment by a chiropractor, neurologists, and physical therapists for neck and back pain and headaches following a motor vehicle accident. Dr. McNairy observed at that time that Mr. Lauer was "feeling rather hopeless about his chances for recovery," and the doctor prescribed an antidepressant for Mr. Lauer and diagnosed him with somatic pain disorder and possible "psychological factors affecting physical condition." Although Dr. McNairy advised Mr. Lauer to go to a pain clinic, Mr. Lauer was reluctant to do so because he thought that it would be no different from what he had been doing on his own at a fitness center.

Although the social security commissioner argues that Dr. McNairy never indicated that Mr. Lauer was unable to engage in work-related activities, Dr. McNairy was never asked to express an opinion about that issue and he did not do so. Under the

circumstances, we conclude that the absence of an opinion does not constitute substantial evidence supporting the ALJ's findings. *Cf. Rosa v. Callahan*, 168 F.3d 72, 81 (2d Cir. 1999) (consultant's reports that were "silent on the issue" did not meet commissioner's burden of establishing that claimant could perform sedentary work).

We note, furthermore, that Dr. McNairy also did not state that Mr. Lauer could engage in full-time employment and did not discharge him from treatment; to the contrary, Dr. McNairy continued to see Mr. Lauer for therapy and to prescribe antidepressants for him until Dr. Bohrod became Mr. Lauer's psychiatrist (about six months before the ALJ hearing). We simply do not know the degree to which Dr. McNairy believed that Mr. Lauer's mental impairments affected his ability to perform work-related activities, nor do we know how Dr. McNairy would have responded to Dr. Bohrod's or Dr. Henze's opinions or to the results of the psychological tests that Dr. Henze administered to Mr. Lauer.

The commissioner also contends that Dr. Larson's assessment of Mr. Lauer's mental RFC supports the ALJ's decision. Dr. Larson lacked both the benefit of Dr. Bohrod's assessment and the opportunity to see Dr. Henze's records. Although Dr. Larson indicated that Mr. Lauer had only minimal work-related limitations resulting from depression, the weight given the opinions of "nonexamining sources" such as Dr. Larson "depend[s] on the degree to which they provide supporting explanations," *see* 20 C.F.R. § 404.1527(d)(3), and Dr. Larson provided no specific medical findings to support his mental RFC assessment. Also, Dr. Larson never examined Mr. Lauer. Generally, even if a consulting physician examines a claimant once, his or her opinion is not considered substantial evidence, especially if, as here, the treating physician contradicts the consulting physician's opinion. *See Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992).

In addition, in contrast to the ALJ, Dr. Larson did not find that Mr. Lauer suffered from a somatoform disorder, which can in itself be a disabling impairment.

*See Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989). We must reject the commissioner's contention that the ALJ relied on Dr. Larson's assessment of the limitations caused by Mr. Lauer's mental impairments when Dr. Larson did not even agree with the ALJ as to the existence *vel non* of those impairments.

The decision of the ALJ is itself unclear as to the medical basis, if any, for his assessment of the degree to which Mr. Lauer's mental impairments affected his RFC: According to the ALJ, the neutral medical advisor who testified at the hearing "concurred" in the ALJ's assessment of Mr. Lauer's "RFC," which was "based mostly" on the opinion of one of Mr. Lauer's treating neurologists. In the first place, we note that the neurologist, who last treated Mr. Lauer nearly a year before he sought psychiatric treatment, did not address Mr. Lauer's mental impairments. As to the medical advisor, who specializes in internal medicine, he did not assess Mr. Lauer's mental RFC or indicate that Mr. Lauer's mental impairments limited him only in his interactions with the public. Significantly, we believe, at the close of his testimony the medical advisor agreed that a "full conclusion about [Mr. Lauer's] psychological condition" was impossible without first obtaining the results of three standardized psychological tests. Apparently in response to this testimony, after the hearing the Social Security Administration asked Dr. Henze to administer the three tests to Mr. Lauer. The ALJ rejected, however, virtually all of Dr. Henze's analysis of the test results and never submitted the test results to the medical advisor or to any other professional for review.

Here the ALJ concluded that Mr. Lauer suffered from mental impairments, and that conclusion is amply supported by the evidence. We believe that to determine Mr. Lauer's RFC, however, the ALJ had to address complex medical issues that could be resolved only with professional assistance, and that the professional opinions in the record do not support the ALJ's assessment of the degree to which the mental impairments affect Mr. Lauer's RFC. We therefore conclude that the ALJ's determination of Mr. Lauer's RFC is not supported by substantial evidence. Because

the hypothetical question posed to the vocational expert was based upon the faulty determination of Mr. Lauer's RFC, the vocational expert's answer to that question cannot constitute sufficient evidence that Mr. Lauer was able to engage in substantial gainful employment. *See Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir. 1998).

If the ALJ did not believe, moreover, that the professional opinions available to him were sufficient to allow him to form an opinion, he should have further developed the record to determine, based on substantial evidence, the degree to which Mr. Lauer's mental impairments limited his ability to engage in work-related activities. *See Nevland*, 204 F.3d at 858; *see also* 20 C.F.R. § 404.1519a(b).

## IV.

We therefore vacate the judgment of the district court and remand the case to the district court with instructions to remand it to the Social Security Administration for further consideration consistent with this opinion. We note, incidentally, that on remand Mr. Lauer is entitled to a determination of how the combination of all of his impairments (mental and physical) affects his ability to work. *See Cunningham*, 222 F.3d at 501.

LOKEN, Circuit Judge, dissenting.

Robert Lauer applied for benefits on November 14, 1994, claiming a disability onset date of August 31, 1993, caused by continuing pain from back, neck, leg, and arm injuries in an auto accident. His application was denied in January 1995, and he requested reconsideration in March 1995, alleging the same disabling physical impairments. After the denial was upheld on reconsideration, Lauer requested a hearing on June 12, 1995. Four days later -- nearly two years after the alleged disability onset date -- Lauer was examined by a psychiatrist for the first time. On August 22, 1996, three weeks after the administrative hearing, Dr. Bohrod wrote to Lauer's attorney that Lauer "may do some independent work." Like the district court,

I conclude that the administrative record, fairly viewed as a whole, contains substantial evidence supporting the Commissioner's decision to deny disability benefits. Accordingly, I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.