# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2578

_____

| | | |
|---|---|---|
| James Harvey, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Jo Anne B. Barnhart, Commissioner, | * | |
| Social Security Administration, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: January 16, 2004
Filed: May 24, 2004

_____

Before MELLOY, BRIGHT, and HANSEN, Circuit Judges.

_____

MELLOY, Circuit Judge.

James Harvey appeals the district court's[1] order affirming the Commissioner's determination he retained the residual functional capacity to perform his past relevant work and, therefore, was not disabled. We affirm.

_____

[1]The Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

An administrative law judge ("ALJ") determined that Harvey suffered from various mental and physical impairments that, collectively, were severe. However, the ALJ determined that these impairments neither met nor were equivalent to a listed impairment. The ALJ also determined that Harvey and Harvey's wife were not credible and that Harvey exaggerated his symptoms as well as his physical and mental limitations. Reviewing records of objective medical tests, reports from treating physicians, testimony from consulting physicians and a psychiatrist (only some of whom personally examined Harvey), testimony from a vocational expert, and testimony regarding Harvey's work history, daily activities and limitations, the ALJ determined that Harvey retained the residual functional capacity to perform his past relevant work as a security guard. The Social Security Appeals Council denied further review, and the ALJ's opinion became the Commissioner's final agency action. The district court affirmed. Harvey appeals.

We review the record as a whole and must affirm the Commissioner's findings if supported by substantial evidence. See Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000) (standard of review). In our review, we must consider evidence that is contrary to, as well as evidence that supports, the Commissioner's findings. Id. Here, substantial evidence in the record as a whole clearly supports the Commissioner's credibility and residual functional capacity determinations.

A consulting psychiatrist who examined but did not treat Harvey stated, *inter alia*, "symptom magnification syndrome"; "[q]uery secondary gain and/or malingering"; "[i]t is difficult to predict this individual's abilities to perform work-related functions based upon objective findings"; and "I doubt that he would be able to remain at work and remain productive during the course of an eight hour day." This opinion, which clearly supports the Commissioner's credibility determination, was equivocal at best regarding Harvey's residual functional capacity. Nevertheless, Harvey points to this opinion as evidence that the record shows he does not possess the residual functional capacity to perform his past work as a security guard. This

and other evidence that Harvey cites in support of his position is largely based on his own subjective complaints.

Harvey's medical records showed, however, that his symptoms were basically controlled or controllable. His medical records showed some limitation in ability to lift and use his right hand, but did not contain any objective evidence of limitations that were as severe as those Harvey claimed in his application for benefits. The medical records contained no objective basis for a finding that Harvey had memory problems and contained only limited instances where Harvey claimed to have memory difficulties. Harvey did not mention memory loss or other mental health impairments on his application for benefits.

Harvey's treating physicians viewed him as not credible. They refused his requests for powerful prescription pain killers, noted repeatedly that his complaints were out of proportion with any identifiable medical causes, and recorded opinions such as "[patient] reports pain out of proportion to physical findings. Will not refill percocet, instruct [patient] to use Tylenol as needed"; "[patient] states that his Ultram is not relieving his pain. [Patient] had an x-ray in February that found only mild degenerative changes. . . . [patient] is a poor historian, as he changes his story frequently and repeatedly asks the same questions. [Patient] admits to past crack, cocaine, and PCP use and claims it has affected his memory"; "atypical presentation, but [patient's] history is so difficult to obtain with confidence"; and "Probable drug seeking behavior. . . . I have explained to [patient] that I usually do not prescribe such a high dose narcotic for joint pain. I reviewed recent X-ray of his right knee which shows borderline [degenerative joint disease] changes only."

Finally, Harvey's testimony before the ALJ was inconsistent with prior statements to physicians, inconsistent with his employment record, and internally inconsistent regarding his ability to perform various functions in daily life (reading, lifting, sitting, standing, etc.). For example, although he claimed that he was unable

to read, he claimed elsewhere that, because his impairments prevented him from sleeping, he regularly arose at three in the morning to read the Bible until his wife awoke hours later. Further, although he claimed he could not sit for more than thirty to sixty minutes and although he claimed the need to use crutches or a non-prescribed walker, he claimed elsewhere that he participated in activities that required greater lengths of sitting and that he could walk a mile, rest, and then walk another mile.

We write further only to address Harvey's specific challenges to the ALJ's reliance on a particular, non-examining consulting physician and a vocational expert. Harvey argues first that the ALJ should not have relied on the opinion of consulting physician Dr. Sophia Kahn in light of the fact that she merely reviewed medical records and failed to personally examine Harvey. It is true that we do not consider the opinions of non-examining, consulting physicians standing alone to be "substantial evidence." See Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999) (finding that, where no other evidence supported an ALJ's residual functional capacity determination, the opinion of a non-examining consulting physician was not "considered substantial evidence in the face of the conflicting assessment of a treating physician"). However, the ALJ in this case did not rely solely on Dr. Kahn's opinion to reach his conclusions. Rather, the ALJ relied on Dr. Kahn's opinion as one part of the record, which, as a whole and as described above, clearly provides substantial support for his findings.

Harvey also argues that Dr. Kahn was unqualified to offer an opinion on issues of mental health and that, even if the ALJ considered the rest of her opinion, it was error to admit Dr. Kahn's testimony regarding Harvey's mental impairments. While it is true Dr. Kahn was an internist rather than a psychiatrist, she testified that she underwent "regular" psychiatric training, treated psychiatric problems as a part of her practice, and previously assessed patients' difficulties in the areas of concentration. Further, the ALJ's reliance on her testimony regarding mental health issues was limited. Dr. Kahn testified, essentially, that there was no objective basis in the

medical records for Harvey's subjective complaints of memory problems. Because her testimony regarding mental health issues was limited, and because she did possess adequate qualifications by virtue of education and experience, we reject Harvey's attack on her qualifications.

Finally, we reject Harvey's claim that the ALJ posed improper hypothetical questions to the vocational expert. Harvey correctly notes that, for a vocational expert's opinion to be relevant, an ALJ must accurately characterize a claimant's medical conditions in hypothetical questions posed to the vocational expert. See Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994) (stating that "[u]nless the hypothetical question comprehensively describes the limitations on a claimant's ability to function, a vocational expert will be unable to accurately assess whether jobs do exist for the claimant"). Harvey, however, fails to show that the ALJ in this case mischaracterized Harvey's symptoms and limitations. The fact that the ALJ omitted from his hypothetical questions those aspects of Harvey's subjective complaints that the ALJ considered non-credible does not render the questions faulty. See Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985) (noting that "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ").

We affirm the judgment of the district court.

_____