# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1639

_____

Charles Gordon Miller

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: January 16, 2015
Filed: April 27, 2015

_____

Before LOKEN, MELLOY, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Charles Miller appeals the district court's[1] judgment upholding the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner determined that Miller was not disabled and

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

therefore not entitled to disability insurance benefits and supplemental security income. We affirm.

## I.    Background

This matter concerns two injuries that Miller suffered: a brain injury from 1998 and a back injury from 2004. Miller claims these injuries caused him to become disabled starting on December 7, 2007. In November 2008, Miller requested disability insurance benefits as well as supplemental security income. He received a hearing before an administrative law judge ("ALJ") to determine his entitlement to these benefits. During this hearing, the following evidence was offered.

A car accident in 1998 caused Miller's brain injury. As relevant here, Miller saw Dr. Jon Rupright in June 2003 for follow-up treatment. Miller reported that he was "doing well" and that his memory had improved with medication. Dr. Rupright increased Miller's dosage so that his memory would continue to improve. When Miller saw Dr. Rupright again in February 2004, Miller reported that he was doing "quite good" and that his memory had continued to improve. Miller saw Dr. Rupright again in June 2005. Although Miller complained of short-term memory problems, Dr. Rupright described Miller's brain injury as "fairly stable." At his next appointment in June 2006, Miller worried that his memory had worsened. However, Dr. Rupright believed sleep patterns and stress, not Miller's brain injury, likely caused any decrease in memory. Indeed, Dr. Rupright described Miller's injury as "stable." Miller next saw Dr. Rupright in October 2007, more than one year later. This time, Miller complained of weakness in his left thigh and arm and chronic back and neck pain. Miller denied stumbling or falling as a result of these issues and reported no gait or balance problems. Dr. Rupright again described Miller's brain injury as "stable" and noted the development of proximal weakness on Miller's left side.

After Dr. Rupright retired, Miller began seeing Dr. Katherine Downey for follow-up treatment.[2] During his October 2008 appointment, Miller reported that he had fallen a "couple of times" but noted that he "works out occasionally, using work out tapes and back stretching exercises." Miller described his back and neck pain as "occasional." Dr. Downey noted that Miller walked normally and that he had good strength in his arms and legs. With respect to Miller's brain injury, Miller and his wife told Dr. Downey that his memory was "much improved" with medication. Dr. Downey decided to make no changes to Miller's treatment regimen. Miller followed up with Dr. Downey in October 2009. Miller reported that he was lifting weights with his son. Dr. Downey recommended that Miller add regular cardiovascular exercise to his workout routine; Miller was "agreeable" to this suggestion. Miller also reported that his memory was slowly improving but that he was having episodes of "violent/aggressive behavior."

Two other individuals also evaluated Miller's brain injury. In November 2004, Dr. Jason Wells, a psychologist, performed a neuropsychological evaluation. Of the various tests that Dr. Wells performed, Miller scored poorly on non-verbal reasoning, abstract thinking, and understanding and following directions. But Dr. Wells described Miller's memory as "average" and found that Miller had no significant deficits with respect to his attention or concentration. Dr. Wells diagnosed Miller with a personality change from his brain injury, noted his history of depression, and calculated a Global Assessment of Functioning score ("GAF score") of forty-nine. Dr. Wells ultimately concluded that Miller likely was capable of a wide array of employment opportunities.

Dr. Attaulah Butt performed a psychiatric evaluation of Miller in December 2010. Although Dr. Butt observed that Miller had never been psychiatrically

---

[2]Dr. Downey later changed her last name to Edwards. To avoid confusion, we refer to her as Dr. Downey throughout this opinion.

hospitalized, Dr. Butt documented Miller's self-reported memory problems. Dr. Butt diagnosed Miller with a closed-head traumatic brain injury, intermittent explosive disorder, a personality disorder, and an unspecified mood disorder. Dr. Butt calculated Miller's GAF score as between forty-five and fifty.

Miller also received treatment for his 2004 back injury. In April 2004, Miller saw his primary-care physician, Dr. Sally Bomar, who prescribed pain medication. When Miller returned with continuing pain, Dr. Bomar referred him to Dr. Alexander Bailey. Dr. Bailey reviewed an MRI of Miller's back and suggested a conservative treatment regimen. However, Miller returned in October 2004 with persistent pain in his legs and back, leading Dr. Bailey to conclude that Miller's initial treatment regimen had failed. Ultimately, in January 2005, Dr. Bailey performed surgery on Miller's back. The next month, Miller reported that the surgery had led to a "major reduction" in his back and leg pain. Miller suffered a "complete setback" in May 2005, but by August 2005, Miller reported that his back and leg pain was "much improved." Dr. Bailey released Miller for work at "medium physical demand level or less."

In advance of Miller's hearing before the ALJ, two consulting physicians offered opinions concerning Miller's residual functional capacity. In November 2007, Dr. David Cathcart observed that Miller walked normally without a cane or a walker, was able "to squat fully and rise from a squatted position on his own power," and had "[n]o trouble moving from a seated to a supine [position] and back to a seated position on his own power." Dr. Cathcart concluded that Miller could sit for six hours during an eight-hour day, occasionally could lift between thirty and forty pounds, and frequently could lift between fifteen and twenty pounds. However, Dr. Cathcart noted that Miller "should be restricted from more than occasional bending, stooping, kneeling, crouching or crawling." Dr. Cathcart therefore found that Miller's neck and back pain could be accommodated in the workplace with the

-4-

exception of "any moderate to heavy labor." Around this same time, Dr. Susan Rosamond similarly concluded that Miller could perform light work.

Several of Miller's doctors also filled out questionnaires about Miller's residual functional capacity. On her questionnaire, Dr. Bomar concluded that Miller could sit for twenty minutes at a time and could stand for thirty minutes at a time. Dr. Bomar further determined that Miller occasionally could lift less than ten pounds, rarely could lift ten and twenty pounds, and never could lift fifty pounds. Dr. Bomar estimated that Miller would miss more than four days of work each month because of his health. Miller's counsel sent Dr. Bomar's questionnaire to Dr. Downey and asked that she review it. Dr. Downey responded that she "would not change or correct any of Dr. Bomar's opinions." Dr. Rodney Smith, a chiropractor who had seen Miller over the course of several years, also filled out a questionnaire. Dr. Smith concluded that Miller was "severely limited [i]n his work ability and conditions." Dr. Smith estimated that Miller could sit and stand for thirty minutes at a time, occasionally could lift ten pounds, rarely could lift twenty pounds, and never could lift fifty pounds.

During his hearing before the ALJ, Miller testified that his back surgery was the primary reason he could not work. Miller estimated that he could stand or sit for twenty minutes at a time and that he could walk one city block before his pain increases. Miller also stated that he could lift forty pounds more than once over half an hour but that doing so would cause back pain and spasms. Miller further testified that he struggles with his memory and concentration because of his brain injury. Miller also stated that he gets angry very easily but that his medication controls this issue.

The ALJ concluded that Miller was not disabled and therefore was not entitled to disability insurance benefits and supplemental security income. In so doing, the ALJ gave "little weight" to Dr. Bomar's, Dr. Smith's, and Dr. Butt's opinions and

concluded that Miller had the residual functional capacity to perform light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b). The Appeals Council denied Miller's request for review, making the ALJ's decision the final decision of the Commissioner. Miller then sought review in the district court under 42 U.S.C. § 405(g). The district court rejected Miller's argument that the ALJ failed to give appropriate weight to his doctors' opinions and found that substantial evidence supported the ALJ's decision. Miller now appeals.

## II.  Discussion

We review *de novo* the district court's decision affirming the ALJ's denial of benefits. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). In reviewing the ALJ's decision, we examine whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors. *Id.* "Substantial evidence is less than a preponderance of the evidence" and is "'such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion.'" *Id.* (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). We may not reverse simply because we would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion. *Id.*

Miller first disputes the ALJ's decision to accord "little weight" to the opinion of Dr. Bomar, Miller's primary-care physician. Miller points out that "[a] treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight." *Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000). Indeed, a treating physician's opinion "should be granted controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Id.* However, the opinion of a treating physician "does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). In fact, "an ALJ may discount or even disregard the opinion of a treating physician

where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)).

The ALJ discounted Dr. Bomar's opinion that Miller could not perform sedentary work as not well-supported by medically acceptable diagnostic techniques and as inconsistent with other substantial evidence in the record. The ALJ observed that Miller failed to provide any diagnostic tests from on or after December 7, 2007, the alleged onset date of his disability, showing continuing problems with his spine. Miller does not dispute this absence of evidence. The ALJ also catalogued the evidence in the record that supported its determination that Miller could perform light work. For example, in November 2007, Dr. Cathcart noted that Miller walked normally without a cane or walker, that Miller could squat and stand back up on his own power, and that Miller had no trouble moving from sitting to lying down and back to sitting. Dr. Downey made similar observations in October 2008, noting that Miller reported working out occasionally, that Miller described his neck and back pain as "occasional," that Miller walked normally, and that he had good strength in his arms and legs. Moreover, in October 2009, Dr. Downey documented that Miller was lifting weights with his son and that he had a smooth, symmetrical arm swing and stride. Dr. Downey also advised Miller that he should begin a regular cardiovascular exercise routine, a recommendation with which Miller agreed. The ALJ also relied upon Dr. Cathcart's and Dr. Rosamond's opinions that Miller was capable of performing light work. Based upon this evidence, we agree with the district court that substantial evidence on the record as a whole supported the ALJ's decision that Miller could perform light work. Therefore, the ALJ was justified in discounting Dr. Bomar's opinion.

Miller relatedly argues that the ALJ should have given more weight to the opinion of Dr. Smith, Miller's longtime chiropractor, that Miller could not perform

sedentary work. As a chiropractor, Dr. Smith "is not an acceptable medical source for determining disability," but "evidence from chiropractors may be used to show 'the severity of [Miller's] impairment(s) and how it affects [his] ability to work.'" *See McDade v. Astrue*, 720 F.3d 994, 999 (8th Cir. 2013) (quoting 20 C.F.R. §§ 404.1513(d), 416.913(d)). The ALJ discounted Dr. Smith's opinion for primarily the same reasons that Dr. Bomar's opinion was given little weight; that is, Dr. Smith's opinion was not well-supported by medically acceptable diagnostic techniques and was inconsistent with other substantial evidence in the record. For the reasons just discussed, the ALJ was free to discount Dr. Smith's opinion.

Miller also contends that the ALJ should have given greater weight to Dr. Butt's opinion. Dr. Butt diagnosed Miller with a closed-head traumatic brain injury, intermittent explosive disorder, a personality disorder, and an unspecified mood disorder. Dr. Butt estimated that Miller's GAF score was between forty-five and fifty. *Cf. Brueggeman v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) (noting that a GAF score of fifty "reflects serious limitations in the patient's general ability to perform basic tasks of daily life"). The ALJ accorded "little weight" to Dr. Butt's opinion because it was based on a single evaluation of Miller and was inconsistent with Miller's daily activities, his statements that his memory had improved, and Dr. Wells's neuropsychological evaluation. The decision to discount Dr. Butt's opinion is supported by substantial evidence on the record as a whole. For example, when Miller saw Dr. Rupright and Dr. Downey, he received generally positive reports about his brain injury. During several of these appointments, Miller or his wife reported that Miller's memory was better with medication. Furthermore, Dr. Rupright regularly described Miller's brain injury as "stable" or "fairly stable." Moreover, Dr. Wells concluded that Miller likely was capable of a wide array of employment opportunities. Although Miller scored poorly in several skill areas, Dr. Wells described Miller's memory as "average" and found that he had no significant deficits with respect to his attention or concentration. Based upon this evidence, the ALJ did not err in discounting Dr. Butt's opinion.

Miller next argues that the ALJ erred by failing to evaluate Dr. Downey's medical opinion. "The Social Security Administration . . . regulations establish that an ALJ will evaluate every medical opinion, regardless of its source . . . ." *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009); 20 C.F.R. § 404.1527(b)-(c). Miller asserts that the ALJ failed to evaluate Dr. Downey's opinion that she "would not change or correct any of Dr. Bomar's opinions [in her questionnaire]." Miller's argument fails for two reasons. First, the ALJ did not entirely disregard Dr. Downey's medical opinion. To the contrary, the ALJ expressly relied upon her observations and recommendations from Miller's appointments in 2008 and 2009. And second, Dr. Downey's statement that she "would not change or correct any of Dr. Bomar's opinions" added nothing of substance to Dr. Bomar's reasoning or conclusions, which the ALJ evaluated and appropriately discounted. For these reasons, the ALJ did not err by failing to consider Dr. Downey's statement.[3]

Last, Miller contends that the ALJ erred by stating that "[a]n individual's residual functional capacity is not a medical issue regarding the nature and severity of an individual's impairments but an administrative finding that is dispositive of a case." As evidence of an error, Miller directs us to our statement that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). Plucked from the context in which it was made, the ALJ's above-quoted statement may seem concerning. But viewed in context, the ALJ simply was explaining that a claimant's residual functional capacity is "ultimately an administrative determination reserved

---

[3]Miller also contends that the ALJ erred by not evaluating the opinions of John Keough, M.A., and Martin Isenberg, Ph.D, two other individuals who offered opinions about Miller. Miller did not raise this argument before the district court, and we decline to consider it for the first time here. *See Rodysill v. Colvin*, 745 F.3d 947, 953 n.3 (8th Cir. 2014) ("[I]t is well established that, unless a manifest justice would result, a claim not articulated to the district court is subject to forfeit on appeal." (quoting *Roberts v. Apfel*, 222 F.3d 446, 470 (8th Cir. 2000)).

to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007). Indeed, immediately after the statement to which Miller now objects, the ALJ explained that "[t]he regulations provide that the final responsibility for deciding [a claimant's residual functional capacity] is reserved to the Commissioner." This explanation of the process for determining a claimant's residual functional capacity is consistent with our conclusions that "a statement by a medical source that a claimant is disabled does not necessarily mean the Commissioner will find the claimant disabled," *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004), and that the ALJ bears "the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," *Wildman*, 596 F.3d at 969 (quoting *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000)).

## III. Conclusion

We affirm.

_____