**Kathleen SKLENAR, Plaintiff,**

**v.**

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.[1]**

**Civil Action No. 01–122.**

United States District Court, W.D. Pennsylvania.

March 28, 2002.

1. Effective November 9, 2001, Jo Anne B. Barnhart became the new Commissioner of Social Security. Under Fed.R.Civ.P. 25(d)(1) and 42 U.S.C. § 405(g), Jo Anne B. Barnhart is automatically substituted as the Defendant in this action.

 

Gregory G. Paul, Peirce, Raimond, Osterhout, Wade, Carlson & Coulter, Pittsburgh, PA, for plaintiff.

Jessica Lieber Smolar, U.S. Attorney's Office, Pittsburgh, PA, for defendant.

### MEMORANDUM ORDER

STANDISH, District Judge.

On January 17, 2001, this case was referred to United States Magistrate Judge Francis X. Caiazza for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. §§ 636(b)($l$)(A) and (B), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

On March 8, 2002, the magistrate judge issued a Report and Recommendation (Doc. 11) recommending that the District Court deny the Defendant's Motion for Summary Judgment (Doc. 9), grant the Plaintiff's Motion for Summary Judgment (Doc. 7), and remand the case to the Commissioner of Social Security for further proceedings as consistent with the Report and Recommendation.

Service of the Report and Recommendation was made on all parties, and no objections have been filed. After a review of the pleadings and documents in the case, together with the Report and Recommendation, the following order is entered:

AND NOW, this 28th day of March, 2002, IT IS HEREBY ORDERED that: the Defendant's Motion for Summary Judgment (Doc. 9) is DENIED; the Plaintiff's Motion for Summary Judgment (Doc. 7) is GRANTED; and this case is REMANDED FORTHWITH to the Commissioner of Social Security for further proceedings as consistent with the Report and Recommendation.

The Report and Recommendation of Magistrate Judge Caiazza dated March 8, 2002 is hereby adopted as the opinion of the court.

*MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

CAIAZZA, United States Magistrate Judge.

## I. RECOMMENDATION

It is recommended that the District Court: deny the Defendant's Motion for Summary Judgment (Doc. 9); grant the Plaintiff's Motion for Summary Judgment (Doc. 7); and remand this case to the Commissioner of Social Security for further proceedings.

## II. REPORT

### BACKGROUND

The Plaintiff Kathleen Sklenar ("Ms. Sklenar" or "the Claimant") filed protectively with the Social Security Administration ("the SSA" or "the Administration") applications for supplemental security income and disability insurance benefits (referred to collectively as "benefits") on May 25, 1999. *See* R. at 97–99, 273–75 (applications for benefits); *see also id.* at 117 ("Disability Report," identifying "[p]rotective filing date" of May 25, 1999). The purported onset date of her disability was November 30, 1997, when she allegedly became unable to work due to "alcohol abuse, anxiety [and a] sleep disorder." *See generally* R. at 97, 108.

The Administration denied Ms. Sklenar's applications for benefits initially and again upon reconsideration. *See* R. at 73, 75, 276, 282. Thereafter the Claimant requested a hearing, which was held before administrative law judge Kenneth Andrews ("the ALJ") on May 9, 2000.

On August 24, 2000, the ALJ issued a decision denying the Claimant's applications for benefits ("the ALJ's decision").

*See* R. at 12–19. In his decision, the ALJ highlighted and applied regulations promulgated under the Contract with America Advancement Act of 1996, Public Law 104–121 (hereinafter "P.L. 104–121"). *See* 42 U.S.C. § 423(d)(2)(C); *see also* ALJ's Decision, R. at 13 (*citing* 20 C.F.R. § 416.935(b)); *id.* at 15–17 (analyzing same). That statute effectively "bar[red] the award of disability benefits based on alcoholism or drug addiction." *See Torres v. Chater*, 125 F.3d 166, 169 (3d Cir.1997). The ALJ made the following findings and rulings relevant to P.L. 104–121:

- The medical evidence establish[ed] that the claimant ha[d] severe depression, anxiety and alcoholism.[2] The claimant's conditions cause[d] limitations [that were] of a severity to satisfy Listings 12.04 [regarding affective disorders] and 12.09 regarding substance addiction disorders. If the claimant did not have a substance addiction disorder, her remaining impairments would be severe but would not meet or equal the criteria of any of the impairments listed in [the relevant regulations].

- The claimant's statements concerning her non-alcohol related impairments and their impact of her ability to work [we]re not credible in light of medical treatment required by the claimant's medical history.

- Absent an addiction disorder, the claimant would have [had] the residual functional capacity ["RFC"] for simple, routine, repetitive work with 1 to 2 step instructions, could only have occasional contact with coworkers and/or supervisors, and could only tolerate a

---

**2.** Ms. Sklenar also allegedly suffered from "a spastic colon" and a "previous rib fracture," but the ALJ concluded that those impairments were "non[-]severe." *See* R. at 15. The Claimant does not challenge these findings, and the court otherwise concludes they are supported by substantial evidence.

low stress environment[,] which [wa]s defined as requiring few decisions.

- The claimant's past relevant work as a dry cleaner/presser did not require the performance of work[-]related activities precluded by the above limitations. [Thus, t]he claimant's impairments [did] not prevent [her] from performing [such] past relevant work. . . .

- The claimant ha[d] not been under a disability[,] as defined in the Social Security Act, at any time through the date of the [ALJ's] decision.[3]

*See* ALJ's Decision, R. at 18.

The Claimant filed with the Appeals Council a request for review of the ALJ's decision, which the Council denied. *See* R. at 5–6 ("Action of Appeals Council on Request for Review"). The Council's denial of her request rendered the ALJ's decision "the final decision of the Commissioner of Social Security. . . ." *See generally id.* at 5.

The Claimant filed this lawsuit on January 16, 2001, seeking judicial review of the ALJ's decision. *See generally* Compl. at ¶ 1 (*citing* 42 U.S.C. § 405(g) as jurisdictional basis for review). The parties have filed cross-motions for summary judgment, which are now ripe for adjudication.

## ANALYSIS

### I. The Standards Applicable Under P.L. 104–121, Generally

The Commissioner has issued regulations governing the implementation of P.L. 104–121 which, as noted above, bars the award of benefits based on alcoholism or drug addiction. *See Torres,* 125 F.3d at 169. Specifically, those regulations provide:

> If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism *is a contributing factor material to the determination of disability. . . .*
>
> The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability *is whether we would still find you disabled if you stopped using drugs or alcohol.*
>
> . . .
>
> In making this determination, *we will evaluate which of your current physical and mental limitations . . . would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling . . . .*

*See* 20 C.F.R. § 416.935(a)-(b) (standards for SSI) (emphasis added); *see also* 20 C.F.R. § 404.1535(a)-(b) (identical standards regarding disability insurance benefits). This court and numerous others have cited and applied these standards in determining whether claimants were entitled to benefits in light of P.L. 104–121. *See, e.g., Kruck v. Apfel,* Civil Action No. 99–940 (W.D. Pa., unpublished Report and Recommendation dated Apr. 19, 2000) (Caiazza, M.J.) (adopted by District Court Judge Gary L. Lancaster by Order dated May 8, 2000); *Williams v. Apfel,* 1999 WL 357357, *2 (E.D.Pa. Jun.3, 1999) (unpublished opinion); *see also, e.g., Mittlestedt v. Apfel,* 204 F.3d 847, 851 (8th Cir.2000) (emphasis added). On the whole, then, the ALJ's decision reveals that the Claimant *was* disabled but was denied benefits under P.L. 104–121. *See id.; see also id.* at 17 ("alcoholism [wa]s a contributing factor material to the determination of the [C]laimant's disability and, consequently, [she wa]s ineligible for disability payments").

---

**3.** Technically, the ALJ's assertion that the Claimant was not disabled "at any time through the date of the [ALJ's] decision" was incorrect. In the body of his decision the ALJ explained that, absent an application of P.L. 104–121, "the [C]laimant [*wa]s found to be disabled* by a substance disorder and secondary depression with anxiety." *See* R. at 15

(*citing* and applying standards listed in 20 C.F.R. § 404.1535); *Brown v. Apfel,* 192 F.3d 492, 499 (5th Cir.1999) (same).

As seen from the applicable regulations, the key inquiry in determining whether alcoholism was a "contributing factor material to the determination of disability" is whether the Claimant "would still [be] . . . disabled if [she] stopped using . . . alcohol." *See* Regulations cited *supra.* Having reviewed the applicable legal authority, this magistrate judge has failed to identify any definitive statement regarding the type of evidence that is required to meet this standard.

■ The courts are in apparent agreement, however, that an ALJ must identify at least *some* medical evidence supporting the conclusion that a claimant no longer would be disabled if he .or she stopped drinking or taking drugs. The case law bears this conclusion out, and this court has found no authority to the contrary. *See, e.g., Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir.2001) (affirming ALJ's finding of non-disability under P.L. 104–121 based on "medical opinions" that claimant "appeared to be entirely normal when sober and did not have chronic physical impairments that would remain if he quit drinking") (internal quotations omitted); *Nevis v. Apfel,* 2000 WL 342665, \*10 (N.D.Cal. Mar.24, 2000) (remanding because "[t]he ALJ did not have the necessary *medical evidence* to find that plaintiff would not be disabled if she stopped using drugs") (emphasis added); *see also, e.g., Davis v. Apfel,* 1999 WL 972007, \*4 (E.D.Pa. Oct.25, 1999) (focusing on medical evidence and opinions in applying P.L. 104–121, and noting that on remand "it would be helpful to have the opinion of the [claimant's] treating physician").

■ The need to identify medical evidence supporting the P.L. 104–121 determination comes as little surprise. It appears a necessary correlate to the rule, applicable in many contexts, that an ALJ may not rely on his or her lay opinions to the detriment of the opinions of duly qualified medical professionals. *See, e.g., Morales v. Apfel,* 225 F.3d 310, 317–18 (3d Cir.2000) ("an ALJ may not make speculative inferences from medical reports," and "may [not] reject a treating physician's opinion" based on "speculation or *lay opinion*") (citations and internal quotations omitted, emphasis added); *Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir.1983) (addressing the "roundly condemned 'sit and squirm' method of deciding disability," and stating that "*an ALJ is not free to set his own expertise against that of physicians who present competent medical evidence*") (citations omitted, emphasis added); *Kelley v. Sullivan,* 1991 WL 157318, \*6 (E.D.Pa. Aug.8, 1991) ("[a]n ALJ may not . . . draw inferences concerning the severity of a plaintiff's impairment based upon the medications prescribed if such inferences derive only from the ALJ's lay opinion") (citation omitted). Moreover in cases like this one, where the claimant's non-drug or alcohol-related limitations arise from "mental limitations," the need to rely on medical evidence as opposed to the ALJ's lay opinion appears even greater. *Cf. Morales,* 225 F.3d at 319 ("[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is *especially profound in a case involving . . . mental disability*") (emphasis added).

For all of these reasons, the court concludes that an ALJ's disability determination under P.L. 104–121 must be supported by at least some medical evidence. *See* discussion immediately *supra; cf. also generally Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir.2001) (applying same standard within context of RFC determination, *i.e.,* an ALJ must "consider at least some supporting evidence from a [medical] professional" in rendering his or her RFC deter-

mination) (citations and internal quotations omitted); *Frankl v. Shalala,* 47 F.3d 935, 938 (8th Cir.1995) (same).[4]

## II. *The ALJ's Analysis Under P.L. 104–121*

In concluding that P.L. 104–121 precluded an award of benefits, the ALJ stated among other things the following:

> After carefully considering the entire record, the [ALJ] finds that[,] considering the limitations that remain if the [C]laimant stopped using alcohol, she would retain the [RFC detailed in this Report, *supra* ]. The above [RFC] assessment is based on the conclusion that[,] if the [C]laimant maintains sobriety, the remaining impairments would only result in slight restriction of daily activities. In addition, the [ALJ] finds the [C]laimant would experience only moderate difficulties in social functioning, if she were not drinking, would seldom have deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner and would never experience episodes of deterioration or decompensation in work or work-like settings.

*See* R. at 16.

■ Perhaps anticipating that a reviewing body may question whether these findings were supported by medical evidence, the ALJ identified medical records and reports purportedly supporting them. *Cf. generally id.* ("[in] identifying the limitations that would remain if the [C]laimant maintained sobriety, the [ALJ] has consid-

ered the opinions of the [C]laimant's treating [and other] sources"). This magistrate judge concludes, however, that none of the records identified by the ALJ sufficiently addresses whether the Claimant would remain disabled if she quit drinking.

First, the ALJ highlighted the report of SSA consultative examiner Marvin D. Wheeler, Ph.D. ("Dr.Wheeler"), dated August 5, 1999. Specifically, the ALJ stated:

> Dr. Wheeler reported as of August 1999 that the [C]laimant was independent in all activities of daily living. . . . In regard to social functioning, Dr. Wheeler reported [that Ms. Sklenar] had no admitted difficulties getting along with others, fair social maturity, good interaction with persons in authority, and a fair to good ability to interact with co-workers or peers. . . . In regard to concentration, Dr. Wheeler again reported that the [C]laimant had at least a fair ability to concentrate and persist at tasks . . . and to adapt to stressful circumstances. . . .

*See* R. at 16.

Regardless of whether the ALJ's statements accurately reflect Dr. Wheeler's findings, they say nothing regarding the state of Ms. Sklenar's impairments if or when she stopped drinking. *See id.* Nor did Dr. Wheeling indicate that his assessments were based on the Claimant's impairments during a phase of abstinence. To the contrary, the physician stated that Ms. Sklenar "admitted to drinking since age 17 and identified [v]odka as her pre-

---

**4.** The District Court should decline to further expound upon the types of medical evidence that in other cases may be sufficient to establish continued disability under P.L. 104–121. In a typical case, it would seem most appropriate to require medical evidence directly addressing the issue, in the form of physician opinion(s) regarding the impact of a hypothetical or actual cessation on the claimant's impairments. It is not beyond comprehension,

though, that in some cases the medical evidence, alone or in conjunction with non-medical evidence, may so clearly show a marked improvement in the claimant's condition during a period of abstinence that, even absent express medical opinion(s), a finding of non-disability is supportable. As will be seen below, however, this is not one of those cases, and the District Court should save these determinations for another day.

ferred beverage," that she reported "continu[ing to] drink a beer occasionally," and that her "insight into her illness [wa]s only fair at best as she had discontinued attending AA meetings.... Her veracity for reporting her situation accurately seem[ed] questionable at times." *See* R. at 192–93, 195 (internal quotations omitted).

Based on his findings, Dr. Wheeler diagnosed Ms. Sklenar as having "adjustment disorder with mixed anxiety and depressed mood" and "alcohol abuse, [rule out] dependence." *See* R. at 195 (internal capitalization of words omitted). Nowhere did the physician's report expressly or implicitly consider what the Claimant's impairments would be if she stopped drinking.[5]

Next the ALJ highlighted treatment notes from "the Turtle Creek Valley MH/MR" ("Turtle Creek") dated February 1998 through November 1998, purportedly indicating that the Claimant "was not abusing alcohol and no symptoms were noted." *See* R. at 16. A review of these records, however, shows them to be far from conclusive. Substantial portions of the treatment notes are, at least to this magistrate judge, illegible. *See* R. at 173–76. In addition, while some legible portions of the notes may be read to indicate that the Claimant enjoyed an undetermined period of abstinence with reduced symptoms, other portions indicate that her symptomology continued during the alleged cessation period identified by the ALJ. *Compare* notes dated Jan. 27, 1998 (indicating that the Claimant had stopped consuming alcohol and that her "mood [was] much better") and Nov. 3, 1998 (reporting "no present [symptoms of] depression or anxiety") *with* notes dated Feb. 27, 1998 (reporting "renewed sleep difficulties"), May 5, 1998 (symptoms of "depres-

sion" and "irritability"), and Jul. 29, 1998 ("irritability from lack of sleep," and "anxious[ness] about welfare/pension issues").

In addition the ALJ's underlying presumption, that the Claimant did not use alcohol between February 1998 and November 1998, is suspect at best. The very notes relied upon by the ALJ indicate that, less than one month before the alleged period of abstinence, Ms. Sklenar "[a]dmitted to drinking 'a little' over the holiday," and that she "seem[ed] uncertain [that] her goal [wa]s total abstinence." *See* notes dated Jan. 6, 1998 (R. at 178); *see also* notes dated Nov. 3, 1998 (stating that the Claimant had "lapse[d] recently when upset" with her boyfriend). In addition, several examining physicians questioned the veracity of the Claimant's self-reports, especially in the area of alcohol consumption and/or cessation. *See, e.g.,* R. at 145 (medical report stating that, although Ms. Sklenar "initially denied any alcohol abuse," she later admitted to "drinking [v]odka up to½ a fifth each day and about a half case of beer per day"); *id.* at 169 (although the Claimant stated her alcohol consumption was "limited to four drinks in one week," her "[c]hart indicat[ed] that [she wa]s currently using" alcohol "daily"); *id.* at 180–81 (Claimant's "records seem[ed] to suggest higher and more recent rate[s] of alcohol use" than reported; the physician "expect[ed] there [was] a great deal of minimization," and the Claimant's "insight into her alcohol problem [was] totally non[-]existent"); *id.* at 185–87 (noting that Ms. Sklenar was "resistant to admitting having a problem with drinking," she had "[m]inimal insight into the disease of addiction," she was "[e]vasive in answering questions about her drinking," and was "in denial of her disease of addic-

---

5. Because Dr. Wheeler did not purport to evaluate the Claimant's impairments in the absence of alcohol consumption, the ALJ's seeming reliance on the physician's RFC as-

sessments was unjustified. As noted above, the ALJ found Ms. Sklenar disabled absent an application of P.L. 104–121. *See* R. at 15.

tion") (emphasis added). For this and the other reasons identified above, the Turtle Creek treatment notes do not constitute substantial evidence for the purposes of P.L. 104–121. *See* discussion immediately *supra; cf. also id.* at n. 4.

Next, the ALJ turned to the report of treating physician Carol Stearns, M.D. ("Dr.Stearns"), dated January 11, 2000. *See* R. at 16. The ALJ noted Dr. Stearns' observations that the "[C]laimant had early sustained remission of alcohol abuse" and, "[a]t that point[,] her functional limitations were only moderate." *See id.* While the ALJ accepted these findings as supportive of his decision, he rejected "Dr. Stearns['] opinion that the [C]laimant could not engage in work activity" as "[un-]supported by the clinical records and contrary to" the Turtle Creek treatment notes, addressed *supra.*

While Dr. Stearns did state that the Claimant's alcohol abuse was "in early sustained remission," her report also appeared to indicate that Ms. Sklenar still had "intermittent" problems with drinking. *See* R. at 216. In addition, the physician's report plainly diagnosed the Claimant with "[m]ajor [chronic] depression" and anxiety, and it stated that Ms. Sklenar's "progress [wa]s guarded." *See id.* Finally the report opined that, although Ms. Sklenar's "functional limitations" generally were "moderate[,] ... *her ability to function adequately in a job environment* requiring consistent daily attendance and work activity [eight hours] a day would demand a lot more of her. *She would probably not be able to perform adequately ....*" *See id.* (emphasis added).

Taking Dr. Stearns' report as a whole, it cannot be read as stating an opinion regarding whether the Claimant would still be disabled if she quit drinking. Moreover, assuming the physician's reference to "early sustained remission" indicated a belief the Claimant no longer was drinking, the report actually *undermines* the ALJ's conclusion that the Claimant could work if she remained abstinent. *See* discussion *supra* (noting Dr. Stearns' opinion that the Claimant would not be able to "function adequately" in a work setting). Last, the ALJ's reasons for discrediting Dr. Stearns' opinions regarding the Claimant's inability to work do not withstand judicial scrutiny. The ALJ's reliance on the Turtle Creek records fails for the same reasons as did his initial consideration of those records. *See* discussion *supra* at 702. To the extent the ALJ concluded Dr. Stearns' opinion were "not supported by the clinical records," moreover, he failed to adequately explain this finding to allow for judicial review. *See Books v. Chater,* 91 F.3d 972, 980 (7th Cir.1996) (an ALJ is required to "sufficiently articulate his assessment of the evidence" so that the court may "trace the path of [his] reasoning") (citations and internal quotations omitted); *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (same).[6]

In sum, none of the medical evidence identified by the ALJ was sufficient to support his finding that the Claimant would not be disabled if she quit drinking. Moreover this magistrate judge's independent review of the entire record, including each and every medical report contained therein, has failed to identify any medical evidence that meaningfully addresses this question. To the contrary, nearly every

---

**6.** The ALJ's reliance on the portions of Dr. Stearns' report purportedly supporting his disability determination, while rejecting those portions that did not, also runs afoul of the general rule that "[a]n ALJ is not entitled to pick and choose through a physician's opin-

ion." *See generally, e.g., Bibbs v. Apfel,* 3 Fed. Appx. 759, 761, 2001 WL 46325, *2 (10th Cir. Jan.19, 2001); *Loza v. Apfel,* 219 F.3d 378, 393–94 (5th Cir.2000) (ALJ "cannot 'pick and choose' only the evidence that supports his position") (citations omitted).

medical opinion of record contains diagnoses of alcohol abuse *and* mental impairments, with no consideration of whether or how the cessation of alcohol consumption would impact the Claimant's limitations. *See, e.g.,* R. at 143, 149, 151, 153, 156, 157, 189, 191, 195, 216 (numerous medical reports diagnosing both alcohol abuse and depression/anxiety, but stating no opinion regarding effects of hypothetical or actual cessation).

■ Because the ALJ failed to identify medical evidence supporting his P.L. 104–121 determination, his decision was not supported by substantial evidence. *See* discussion *supra* (concluding that P.L. 104–121 determination must be supported by at least some medical evidence). It follows that the non-medical evidence identified by the ALJ, discussed below, is likewise deficient.

First, the ALJ appears to infer that the Claimant's reports regarding her daily activities suggest she would not be disabled if she stopped drinking. Specifically, the ALJ noted the Claimant's reports that, "as of June 17, 1999, ... she [did] not need any special help to take care of her personal needs, [she] clean[ed] her home ..., [did] her own shopping, prepare[d] meals, [paid] her bills, play[ed] with her daughter, [had] no ·difficulty going out in public, [could] start and complete puzzles, [made] decisions on her own, and [did] not need help taking her medications...." *See* R. at 16.

Nowhere in her self-reports, however, did the Claimant indicate that these life activities could be performed only when she was not drinking. The record appears to the contrary, as the Claimant's Disability Report, which was completed one week before the daily activities form cited by the ALJ, identified "alcohol abuse" as one of Ms. Sklenar's impairments. *See* R. at 108 (Disability Report); *see also id.* at 121–25 ("[d]aily [a]ctivities [q]uestionnaire," completed one week later). Thus, there is no basis for concluding that Ms. Sklenar's self-reports reflected improvement in her ability to engage in daily activities based on cessation of alcohol consumption.

In addition, the ALJ noted "[t]he record does not reveal ... the [C]laimant left her previous employment due to her nonexertional problems." *See* R. at 16. Defense counsel posits that, where a claimant's "loss of jobs" was "due to lay-offs [or] other problems" not related to her "allegedly disabling impairments," this fact is "probative evidence of non-disability." *See* Def.'s Br. in Supp. of Mot. for Summ. J. (Doc. 10) at 14 (citation omitted). Regardless of whether this constitutes an accurate statement of the law, it has no application in this case. The standard simply cannot account for the ALJ's having found the Claimant disabled absent the operation of P.L. 104–121. *See* discussion *supra* at 699 n. 3.

The ALJ also stated "it [was] noteworthy that after the [C]laimant discontinued her use of alcohol[,] her attention turned to physical complaints such as abdominal pain and gastrointestinal bleeding." *See* R. at 16 (citing medical records addressing such complaints). Although it is unclear how much weight the ALJ afforded this observation, it is far from convincing. First the ALJ's underlying presumption, that Ms. Sklenar had "discontinued her use of alcohol" before seeking treatment for her abdominal symptoms, is highly suspect. As noted above, there are an abundance of medical opinions calling into question the Claimant's reports regarding purported period(s) of abstinence. *See* discussion *supra* at 703. Second, any negative inference that may be drawn from the Claimant's seeking treatment for abdominal symptoms is far too speculative to merit consideration. *Cf. generally Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir.1999) ("an ALJ may not make speculative inferences

from medical reports") (citation omitted). Simply stated, it is no less likely that Ms. Sklenar sought treatment for her abdominal symptoms when and only when they warranted it.

Last, the ALJ "noted that the [C]laimant has [at times] been noncompliant with her medications." *See* R. at 17. Indeed, there is at least some evidence that Ms. Sklenar "[did] not take her medication[s] as prescribed." *See, e.g.,* R. at 195. The ALJ's assertion that the Claimant "reported a substantially improved mental status" when she took her medicine, however, is not substantially supported. *See* R. at 17 (citing Turtle Creek treatment notes). This magistrate judge's review of the current record, including the Turtle Creek treatment notes cited by the ALJ, has failed to identify sufficient evidence supporting a conclusion that Ms. Sklenar's impairments were (or could be) fully controlled through medication. *Cf., e.g., Ventura v. Shalala,* 55 F.3d 900, 902 (3d Cir. 1995) ("ALJs have a duty to develop a full and fair record in social security cases") (citations omitted); *cf. also, e.g.,* R. at 216 (Dr. Stearns' report, "recommend[ing] ... ongoing medication" but nevertheless stating that the Claimant's "prognosis [wa]s guarded"). Thus, while the ALJ should remain free to revisit these issues on remand if appropriate, his observations regarding Ms. Sklenar's failure to comply with her medicinal regimen and her purported improvement upon compliance are

insufficient to support his current disability determination.[7]

### III. *Instructions on Remand*

■ For all of the reasons stated above, the ALJ's determination under P.L. 104–121 was not supported by substantial evidence. In moving for summary judgment, Claimant's counsel does not seek an immediate award of benefits, stating only that the case "should be remanded for a supplemental hearing to determine the materiality of [Ms. Sklenar's] alcohol abuse" under the applicable regulations. *See* Pl.'s Br. in Supp. of Mot. for Summ. J. (Doc. 8) at 9. This magistrate judge agrees with counsel's implicit concession that the current record cannot support a disability determination, either in favor of or against Ms. Sklenar, under P.L. 104–121. Thus, a remand to the Commissioner is warranted.

In *Brown* (cited *supra* at 700), the Court of Appeals for the Fifth Circuit provided the appropriate framework to be applied on remand. As in this case, the circuit court in *Brown* concluded that there existed insufficient evidence "in the record [to] cast[ ] any light on whether" the claimant's mental impairment "would subside if she stopped consuming alcohol...." *See id.,* 192 F.3d at 499. In remanding the case for further evidentiary gathering, the court held that the claimant bore the burden of proving whether she would have remained disabled upon her abstinence. *See id.* at 498–99.[8] Accordingly, the court

---

**7.** In light of the ALJ's conclusion the Claimant *was* disabled but that her alcohol consumption was a material contributing factor, his analyses regarding the treatment of mental impairments cannot constitute evidence addressing the effects that cessation would have on the Claimant's condition. Only after the ALJ determined that alcoholism materially contributed to Ms. Sklenar's disability should the issue of whether her medications controlled her remaining impairments have been reached. *See* 20 C.F.R. § 416.935(a)-(b)

(ALJ should "evaluate which ... mental limitations ... would remain if [the claimant] stopped using ... alcohol *and then determine whether any or all of [her] remaining limitations would be disabling* ") (emphasis added).

**8.** The *Brown* Court held that the claimant bears such a burden because, among other things, P.L. 104–121 amended the definition of "disability" under the Act, and proving disability has always ultimately remained the claimant's burden. *See id.* at 498. It also held that, "pragmatically," the claimant "is

held that the claimant was required to "introduce evidence that ... she would still be disabled ... even if she stopped using ... alcohol. Of course, the ALJ ha[d] the option of ordering a consultative examination to guide his determination on remand." *Id.* (citation and internal quotations omitted); *see also* Report and Recommendation in *Kruck*, Civil Action No. 99–940, at 22–24 (*citing* and *quoting Brown* and applying same standards).

The standards in *Brown* are well-reasoned, and they should be applied to the remand in the instant case. Accordingly, it is recommended that this case be remanded to the Commissioner for the collection of medical evidence regarding whether the Claimant would still be disabled if she stopped drinking. On remand, the ALJ should have the option of ordering a consultative examination or examinations to fulfill his duties under P.L. 104–121 and the regulations otherwise applicable under the five-step sequential disability evaluation. *See Brown*, 192 F.3d at 499; *see also generally Knepp v. Apfel*, 204 F.3d 78, 83–84 (3d Cir.2000) (outlining five-step sequential evaluation). In addition, the Claimant should be afforded a reasonable opportunity to supplement the medical evidence to address the issues identified herein. *See Gachette v. Weinberger*, 551 F.2d 39, 40–41 (3d Cir.1977) (counsel "should be permitted to make an offer of proof regarding what a more fully developed record might have shown"); *see also Stover v. Shalala*, 1995 WL 327981, *8 (E.D.Pa. May 31, 1995) (on remand, claimant was to "be given an opportunity at th[e] rehearing to submit additional relevant evidence"). Finally, the Claimant should remain cognizant that the ultimate burden of proving continued disability under P.L. 104–121

the party best suited to demonstrate whether she would still be disabled in the absence" of drug or alcohol use, and that the court was "at a loss to discern how the Commissioner is

rests with her. *See Brown*, 192 F.3d at 498.

## CONCLUSION

For the reasons set forth above, the District Court should deny the Defendant's Motion for Summary Judgment (Doc. 9), grant the Plaintiff's Motion for Summary Judgment (Doc. 7), and remand this case to the Commissioner of Social Security as consistent with this Report and Recommendation.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to this report and recommendation are due by March 25, 2002. Responses to objections are due by April 5, 2002.

March 8, 2002.

supposed to make such a showing, the key evidence [of] which will be available most readily to" the claimant. *See id.*